POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA LAWRENCE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>D-WAVE QUANTUM INC., ALAN BARATZ, and JOHN M. MARKOVICH,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Victoria Lawrence ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding D-Wave Quantum Inc. ("D-Wave" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired D-Wave securities between February 27, 2026 and August 25, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. D-Wave is a quantum computing company focused on the development and delivery of quantum computing systems, software, and services.

3. At all relevant times, D-Wave represented that its "business model is focused on generating revenue from providing customers access to our quantum computing systems via the cloud in the form of quantum computing as a service ("QCaaS") products, providing professional services wherein we assist our customers in identifying and implementing quantum computing applications, and selling our quantum computer systems to customers." Accordingly, Defendants reported the Company's revenue in segments including, as relevant here, quantum computer system sales.

4. After entering into an agreement to sell a quantum computer system, D-Wave recognizes revenue from such sales on a percentage of completion basis, given that several steps are required to render a quantum computer system operational, including but not limited to preparation of the site where the quantum computer will be located, installation, and subsequent calibration of the system.

5. Although Defendants disclosed to investors these intermediary steps that D-Wave would need to complete between entering a quantum computer sales agreement and recognizing revenue from that sale, they nonetheless assured investors that revenue recognition from such system sales would take place within "multiple months and possibly quarters".

6. On January 27, 2026, D-Wave announced that Florida Atlantic University had agreed to purchase a quantum computer system for $20 million (the "FAU System Sale"). In this announcement, D-Wave stated that the "***deployment***" of this quantum computer system was "***expected later in 2026***".[1] Given that D-Wave, at all relevant times, recognized revenue from quantum computer systems sales on a percentage-of-completion basis, stating that D-Wave expected deployment of a quantum computer system later in 2026 was, in essence, a statement that Defendants expected D-Wave to recognize revenue from the sale of this system later in 2026.

7. In addition, throughout the Class Period Defendants consistently assured investors that D-Wave enjoyed robust bookings for future sales and that D-Wave's customers expressed "***growing interest***" in such sales.

8. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants materially understated the amount of time needed to execute intermediary steps necessary to recognize revenue from quantum computer system sales, including the FAU System Sale; (ii) Defendants materially overstated their ability to convert purportedly robust demand for quantum computer systems into sales agreements and recognized revenue; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

[1] All emphases herein are added unless otherwise indicated.

9. The truth began to emerge on May 12, 2026, when D-Wave reported its financial results for the first quarter of 2026. Among other items, D-Wave reported revenue of only $2.86 million, compared to $12.6 million for the same period in the prior year, and below analyst expectations of $4.04 million. D-Wave also announced a revised timetable concerning FAU's quantum computer system, stating that "system installation is expected to commence before the end of 2026".

10. On this news, D-Wave's stock price fell $1.68 per share, or 6.69%, to close at $22.35 per share on May 12, 2026.

11. Then, on August 6, 2026, D-Wave reported its financial results for the second quarter of 2026. Among other items, D-Wave reported revenue of only $3.08 million, compared to $3.1 million for the same period in the prior year, and missed analyst expectations in the range of $4.03 million to $4.08 million. In the quarterly report on Form 10-Q it filed with the SEC that day, D-Wave explained its revenue from system sales during the quarter decreased year-over-year by $0.8 million, "primarily due to variability in the timing and extent of system installation activities and extent of installation activities in each period", and similarly attributed a year-over year decrease in its revenue for the first six months of 2026 to a "decrease in systems sales" that "was primarily due to the timing of progress recognized under the percentage-of-completion method on the system contracted for delivery in each period."

12. On this news, D-Wave's stock price fell $1.99 per share, or 9.28%, to close at $19.41 per share on August 6, 2026.

13. Then, on August 25, 2026, D-Wave issued a press release "announc[ing] that John Markovich is retiring and thus resigning from his position as Chief Financial Officer effective September 2, 2026."

14. On this news, D-Wave's stock price fell $1.84 per share, or 9.51%, to close at $17.51 per share on August 26, 2026.

15. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

16. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

17. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

18. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). D-Wave is currently headquartered in this District,[2] Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

19. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

---

[2] On January 27. 2026, D-Wave announced it had "selected Boca Raton, Florida as the location of its new corporate headquarters", and that it "plans to transition its headquarters . . . before the end of 2026." As of the time of the filing of this Complaint, D-Wave has not yet completed this transition.

## PARTIES

20. Plaintiff, as set forth in the attached Certification, acquired D-Wave securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

21. Defendant D-Wave is a Delaware corporation with principal executive offices located at 2650 East Bayshore Road, Palo Alto, California, 94303, as of the time of the filing of this Complaint. The Company's common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "QBTS".

22. Defendant Alan Baratz ("Baratz") served as D-Wave's Chief Executive Officer ("CEO") and President at all relevant times.

23. Defendant John M. Markovich ("Markovich") served as D-Wave's Chief Financial Officer at all relevant times.

24. Defendants Baratz and Markovich are collectively referred to herein as the "Individual Defendants."

25. The Individual Defendants possessed the power and authority to control the contents of D-Wave's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of D-Wave's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with D-Wave, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

26. D-Wave and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

27. D-Wave is a quantum computing company focused on the development and delivery of quantum computing systems, software, and services.

28. At all relevant times, D-Wave represented that its "business model is focused on generating revenue from providing customers access to our quantum computing systems via the cloud in the form of QCaaS products, providing professional services wherein we assist our customers in identifying and implementing quantum computing applications, and selling our quantum computer systems to customers." Accordingly, Defendants report revenue in segments including, as relevant here, quantum computer system sales.

29. After entering into an agreement to sell a quantum computer system, Defendants recognize revenue from such sales on a percentage of completion basis, given that several steps are required to render a quantum computer system operational, including but not limited to preparation of the site where the quantum computer will be located, installation, and subsequent calibration of the system.

30. Although Defendants disclosed to investors these intermediary steps that D-Wave would need to complete between entering a quantum computer sales agreement and recognizing revenue from that sale, they nonetheless assured investors that revenue recognition from such system sales would take place within "multiple months and possibly quarters".

31. On January 27, 2026, D-Wave announced the FAU System Sale for at a value of $20 million. In this announcement, D-Wave stated that the "***deployment***" of this quantum computer system was "***expected later in 2026***". Given that D-Wave, at all relevant times,

recognized revenue from quantum computer systems sales on a percentage-of-completion basis, stating that D-Wave expected deployment of a quantum computer system later in 2026 was, in essence, a statement that Defendants expected D-Wave to recognize revenue from the sale of this system later in 2026.

**Materially False and Misleading Statements Issued During the Class Period**

32. The Class Period begins on February 27, 2026, the day that D-Wave filed an annual report on Form 10-K reporting its financial and operating results for the quarter and year ended December 31, 2025, issued a press release announcing the same, and held a conference call to discuss the same (the "FY 2025 Earnings Call"). That press release quoted Defendant Baratz as stating Defendants entered the 2026 fiscal year with "exceptional momentum", citing "over $30 million in Bookings in January alone". This press release also highlighted the FAU System Sale, reiterating that Defendants expected "***deployment . . . by the end of 2026***", stating in relevant part:

> "Our 2025 results mark one of the most successful and transformative years in D-Wave's history, with meaningful growth across every key business metric — revenue, Bookings, technical milestones, and scientific breakthroughs," said Dr. Alan Baratz, CEO of D-Wave. "***We are entering 2026 with exceptional momentum: generating over $30 million in Bookings in January alone***, expanding our market leadership through the acquisition of gate-model quantum computing company Quantum Circuits, Inc., and securing an eight-figure enterprise QCaaS agreement that underscores growing customer confidence in our technology's power to transform enterprise operations. ***2026 is shaping up to be a defining year for D-Wave***.".
>
> Business and Technical Highlights: . . . Subsequent to the close of the fourth quarter, ***announced a $20 million system purchase by Florida Atlantic University, with deployment expected by the end of 2026*** . . . .

33. During the FY 2025 Earnings Call, Defendant Baratz represented to investors that D-Wave's positive performance during the 2025 fiscal year would continue into 2026, stating "[i]n an industry long on promises, D-Wave is delivering measurable results" and "we have entered 2026 with extraordinary momentum", stating in relevant part:

> ***In an industry long on promises, D-Wave is delivering measurable results. And now we have entered 2026 with extraordinary momentum***. In January alone, we generated more bookings than in the entirety of fiscal 2025. We closed a $20 million system sale with Florida Atlantic University. We signed a 2-year $10 million enterprise Quantum Compute as a Service agreement with a Fortune 100 company, one of the largest enterprise Quantum Compute as a Service deals in the history of the quantum computing industry . . . .

34. Defendant Baratz also touted the Company's ongoing discussions with a variety of commercial customers and told investors that those discussions would translate into future revenue, claiming these customers were "no longer asking if Quantum will be useful someday', and instead were "asking how quickly they can deploy it", stating, in relevant part:

> D-Wave is currently engaged with some of the world's leading airlines, payment companies, telecom operators, defense contractors, chemical companies, health care companies, aerospace companies and more. ***Customers are no longer asking if Quantum will be useful someday. They are asking how quickly they can deploy it***.

35. Defendant Baratz also announced that the Company had "recently launched a dedicated U.S. Government Solutions business unit", to "support escalating government interest in both our annealing and gate-model technologies" and execute the Company's "***strategy . . . [to] derive government revenue today***", stating, in relevant part:

> ***The U.S. government is also taking note***. To support escalating government interest in both our annealing and gate-model technologies, we recently launched a dedicated U.S. Government Solutions business unit. Unlike other quantum companies that are focused primarily on securing federal R&D grants and characterizing those as commercial revenue, ***our strategy is very straightforward, solve real mission-critical problems now and derive government revenue today***. . . ***We believe that there is significant opportunity in U.S. government applications*** across both our annealing and gate-model platforms.

36. Defendant Baratz further represented to investors that D-Wave's system sales segment would see improved performance in the future, stating "***[w]e're also seeing growing interest in systems sales***", highlighting specific "discussions" in support of his claim and stating in relevant part:

> ***We're also seeing growing interest in system sales***. In addition to annealing quantum computing system-related agreements with Julich in Germany, Q-Alliance in Italy and Florida Atlantic University in the U.S., ***we continue to advance discussions in South Korea as well as with additional [high-performance computing], academic and government institutions***.

37. At the conclusion of his prepared remarks on the FY 2025 Earnings Call, Defendant Baratz reiterated his positive outlook for the coming fiscal quarters and year, offering "[t]he momentum we are seeing in early 2026" as the basis for his view and stating in relevant part:

> The quantum industry will not support dozens of long-term winners. It will support a handful of durable platforms, and we intend to be one of them. Fiscal 2025 marked the moment when D-Wave moved from participant to frontrunner. ***The momentum we are seeing in early 2026 suggests that this gap is widening***.

38. Later during the FY 2025 Earnings Call, Defendant Markovich similarly touted D-Wave's financial prospects for the 2026 fiscal year, specifically calling investors' attention to the Company's purported "tremendous start with fiscal 2026 year-to-date bookings already exceeding our annual booking for any year in the company's history", stating in relevant part:

> With respect to 2026, we will continue our practice of not providing formal financial guidance. However, I would like to provide some parameters. With respect to bookings, ***we are obviously off to a tremendous start with fiscal 2026 year-to-date bookings already exceeding our annual bookings for any year in the company's history***.
>
> As Alan noted earlier, our sales opportunity pipeline entering 2026 was up nearly 1,500% to the beginning of 2025 that includes a 700% increase in the total number of prospective sales transactions. And ***we continue to see interest in potential system sales***, not only for our Advantage2 annealing system, but also for our dual rail gate-model quantum systems. However, as we have previously noted, the system sales process is fairly complex and the sales cycle is usually lengthy in duration.

39. Also during his prepared remarks, Defendant Markovich explained that Defendants recognized revenue from systems sales "on a percentage of completion basis", stating in relevant part:

> With respect to revenue recognition, on system sales, please keep in mind that most of these transactions will involve site preparation, installation, calibration and other key steps before the systems are fully operational. They are likely to encompass

> multiple months and possibly quarters depending on the unique elements of a particular system transaction. As a result, our revenue recognition on system sales is on a percentage of completion basis.

Accordingly, based upon Defendant Markovich's explanation, investors would expect D-Wave to recognize revenue from systems sales in full by the time a system was completed and "fully operational".

40. During the question-and-answer portion of the FY 2025 Earnings Call, one analyst asked Defendants about their pipeline of potential systems sales and "how quickly can this pipeline turn into maybe confirmed revenue". In response, Defendant Baratz claimed that Defendants boasted a "strong" and "robust" pipeline for systems sales, and that investors could expect more than one system deal per year, stating in relevant part:

> I'm not going to address the revenue piece because that's all based on the revenue recognition policies of the company and different deals have different recognition time lines. But as far as closing the deals, I mean, ***we've got a strong pipeline*** for both system sales. I mean, honestly, when we talked about this at the beginning of last year, I said expect maybe one a year for the foreseeable future. ***Our pipeline for system sales right now is very robust. So we're beyond one a year at this point in time***.

41. The statements referenced in ¶¶ 32–38, 40 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants materially understated the amount of time needed to execute intermediary steps necessary to recognize revenue from quantum computer system sales, including the FAU System Sale; (ii) Defendants materially overstated their ability to convert purportedly robust demand in quantum computer systems into sales agreements and recognized revenue; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

42. The truth began to emerge on May 12, 2026, when D-Wave filed with the SEC a quarterly report on Form 10-Q reporting its financial and operating results for the quarter ended March 31, 2026, issued a press release announcing the same, and held a conference call to discuss those results (the "Q1 Earnings Call"). Among other items, D-Wave reported revenue of only $2.86 million, compared to $12.6 million for the same period in the prior year, and missed analyst expectations of $4.04 million.

43. In its press release, D-Wave also announced a revised timetable in which Defendants would deploy of the quantum computer system that FAU had agreed to purchase from the Company. Instead of maintaining their previous claim that "***deployment [was] expected by the end of 2026***", Defendants now merely stated that "***system installation is expected to commence before the end of 2026***", stating in relevant part: "D-Wave has started implementing a training program at FAU to enable the faculty to leverage quantum resources in their research and curriculum, and system installation is expected to commence before the end of 2026." Given that Defendants recognized revenue from systems sales on a percentage of completion basis, D-Wave's revised claim that installation would begin before the end of 2026, rather than deployment by the end of 2026, was in substance a concession that Defendants no longer expected to recognize revenue from the FAU System Sale by the end of 2026.

44. On this news, D-Wave's stock price fell $1.68 per share, or 6.69%, to close at $22.35 per share on May 12, 2026.

45. Notwithstanding the foregoing disclosures and resulting drop in D-Wave's share price, D-Wave's stock continued to trade at artificially inflated prices due to Defendants' continued false and misleading statements about the time it would take them to recognize revenue

from quantum computer system sales and the cadence at which they expected to execute agreements for such sales.

46. For example, during the Q1 Earnings Call, Defendant Baratz reiterated that the D-Wave enjoyed "momentum" entering the 2026 fiscal year, and stated that events since that FY 2025 Earnings Call supported this claim, stating "[t]oday, that momentum is translating into measurable business outcomes" and proceeded to name several outcomes including the FAU System Sale, stating in relevant part:

> ***On our last quarterly earnings call, I said that 2025 was an inflection point for D-Wave, and our results continue to support that view***. Last year marked a period of clear technical progress and accelerating commercial momentum, including a triple-digit increase in our sales pipeline that continued to expand through the first quarter. ***Today, that momentum is translating into measurable business outcomes. As discussed, in January alone, we signed 2 landmark agreements, a $20 million system sale to Florida Atlantic University*** and the industry's first $10 million enterprise license quantum computing as a service deal. We have previously covered those transactions, so I won't repeat the details here, but I will emphasize their impact as they help to drive record first quarter bookings.

47. Also, during the Q1 Earnings Call, Defendant Baratz communicated improved expectations as to D-Wave's system sales for the remainder of the year, stating that Defendants expected "***two or three systems deals per year with expected delivery of at least two systems this year in 2026***", an improved outlook on the "1 system per year" claim he made during the FY 2025 Earnings Call, stating in relevant part:

> With regard to system sales, I also want to point out that while I originally shared with you that we expect to sell 1 system per year, the pipeline is much stronger. ***We're now expecting 2 or 3 system deals per year with expected delivery of at least 2 systems this year in 2026***.

Given Defendants' practice of recognizing revenue on a percentage-of-completion basis, as alleged *supra* ¶ 39, Defendant Baratz's claim that Defendants "expected delivery of at least two systems this year" was, in essence, a representation that D-Wave expected to recognize revenue from such systems sales during 2026.

48. Analyst commentary following D-Wave's Q1 2026 earnings announcement showed Defendants' statements had their desired effect. For example, even though Mizuho lowered its price target for D-Wave's stock 6.45%, from $31 to $29, it maintained an Outperform rating and claimed that D-Wave's strong bookings and execution on its roadmap boded well for its future, writing "we see QBTS well-positioned as the only dual-modality QC platform" citing, among three "[k]ey points", "MarQ booking at ~$33.4M, up 149% q/q". Similarly, Canacoord Genuity reduced its price target for D-Wave's stock 4.65%, from $43 to $41, but maintained a Buy rating on the basis of the bookings Defendants reported, writing "D-Wave's Q1 '26 results demonstrated significant business traction . . . . Bookings of $33.4M (+149% qoq) and [remaining performance obligations ("RPO")] of $42.4M (+563% yoy) are landmark results for the firm and reflect genuine commercial traction, anchored [in part] by the $20M Florida Atlantic system sale . . . ." Canacoord Genuity also specifically called out Defendants' claim that they expected "two or three systems sales per year", writing: "Management raised system sales cadence from one per year to 2-3, ***with at least two deliveries committed in 2026 – implying additional unannounced wins already deep in negotiation***." Jefferies made similar observations, writing: "QBTS March Q revenue came in below the Street . . . but the underlying momentum remains, ***with record bookings***, [and] surging RPO . . . . ***The systems sales trajectory increased from 1 system sale per year to 2-3 per year (at least two deliveries expected in 2026), which we view as significant*** and as demonstrating demand for QBTS' technology."

49. The statements referenced in ¶¶ 46–48 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants materially understated the amount of time needed to execute intermediary steps necessary to

recognize revenue from quantum computer system sales, including the FAU System Sale; (ii) Defendants materially overstated their ability to convert purportedly robust demand in quantum computer systems into sales agreements and recognized revenue; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

**The Truth Continues to Emerge**

50. On August 6, 2026, D-Wave filed with the SEC a quarterly report on Form 10-Q reporting its financial and operating results for the quarter ended June 30, 2026 (the "Q2 Form 10-Q"), issued a press release announcing the same, and held a conference call to discuss those results (the "Q2 Earnings Call"). Among other items, D-Wave reported revenue of only $3.08 million, compared to $3.1 million for the same period in the prior year, and missed analyst expectations in the range of $4.03 million to $4.08 million.

51. In its Q2 Form 10-Q, D-Wave disclosed that its revenue from system sales during the quarter decreased year-over-year by $0.8 million, "primarily due to variability in the timing and extent of system installation activities and extent of installation activities in each period." D-Wave further disclosed that its revenue for the six months ended June 30, 2026 decreased year-over-year by $12.2 million, or 67%, to $5.9 million, "primarily driven by a decrease in system sales of $13.3 million", and stated that "[t]he decrease in system sales was primarily due to the timing of progress recognized under the percentage-of-completion method on the system contracted for delivery in each period."

52. During his prepared remarks on the Q2 Earnings Call, Defendant Markovich reiterated Defendants' expectation that they would "ship two annealing quantum computer systems over the balance of this year", but disclosed that the timing of these systems "are likely to . . . result[] in some carryover revenue related to the installation and calibration of these systems into 2027", stating in relevant part:

> As Alan previously noted, we still expect to ship two annealing quantum computer systems over the balance of this year, both of which are likely to ship during the fourth quarter, ***resulting in some carryover revenue related to the installation and calibration of these systems into 2027***. Given this timing, we are expecting the third quarter revenue is likely to be up modestly from the second quarter revenue with fourth quarter revenue up significantly over the third quarter revenue and comprising the majority of the year's total revenue.

53. During the question-and-answer portion of the Q2 Earnings Call, one analyst asked Defendants about Defendant Markovich's previous claim that Defendants expected to deliver "***two or three systems deals per year***", as alleged *supra* ¶ 47, asking whether "roughly $40 million to $60 million in revenue" was equivalent to "thinking about that correctly". In response, Defendant Markovich told the analyst to "think about a system being toward the lower end of [a] range" between "$20 million and $40 million", and stated that D-Wave would recognize revenue from those deals "on average over a two-quarter period of time", stating in relevant part:

> So we've outlined pricing on our annealing systems, Gary, of between $20 million and $40 million, with the lower end of that geared towards research labs and universities. And that's the pricing on the Florida Atlantic University. So to be conservative, think about a system being towards the lower end of that range.
>
> Typically, the timing is a function of site selection. And then it takes time to build the system, install it and then to calibrate it. And as I've outlined previously, you should think of the rev rec to be on average over a two-quarter period of time.

54. Defendant Baratz followed up on Defendant Markovich's response by modifying this projection, stating: "I think John once the site is ready over a two-quarter period of time."

55. On this news, D-Wave's stock price fell $1.99 per share, or 9.28%, to close at $19.41 per share on August 6, 2026.

56. Following Defendants' revelations, analysts lowered their respective price targets for D-Wave's stock. For example, on August 6, 2026, Canacoord Genuity reduced its price target 14.63%, from $41 to $35, writing "D-Wave's Q2 print was ultimately one of meaningful technological and commercial progress even if in-quarter reported revenue and bookings indicate more modest growth". On the same date, Mizuho reduced its price target 17.14%, from $35 to

$29, writing "[w]e are adjusting our 2026/2027E rev estimates to ~$38M/~$91M from ~$39M/$90M". Also on August 6, 2026, Roth Capital Partners reduced its price target 25%, from $40 to $40, writing that this price target "reflect[ed] market valuations".

57. Then, on August 25, 2026, D-Wave issued a press release "announc[ing] that John Markovich would retire and thus resign from his position as Chief Financial Officer effective September 2, 2026."

58. On this news, D-Wave's stock price fell $1.84 per share, or 9.51%, to close at $17.51 per share on August 26, 2026.

59. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

60. During the Class Period, Defendants had both the motive and opportunity to commit fraud. During the Class Period, the Individual Defendants enriched themselves by selling ***over 1.45 million shares*** of D-Wave common stock for ***over $37.3 million in proceeds***. Defendant Baratz sold 769,267 shares of D-Wave common stock for over $19.8 million in proceeds, while Defendant Markovich sold 667,256 shares of D-Wave common stock for over $17.5 million in proceeds.

61. Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. Defendants repeatedly spoke to the purportedly robust customer demand for quantum computer systems, as alleged *supra* ¶¶ 7, 32, 34–36, 38, 40, the timeline in which they expected to recognize revenue from quantum computer sales, including the FAU System Sale, as alleged *supra* ¶¶ 6, 31, 32, 43, 47, and the expected cadence at which they expected to enter into sales agreements for

quantum computer systems, as alleged *supra* ¶¶ 40, 47. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

62. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired D-Wave securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

63. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, D-Wave securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by D-Wave or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

64. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

65. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

66. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of D-Wave;
- whether the Individual Defendants caused D-Wave to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of D-Wave securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

67. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

68. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;
- D-Wave securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold D-Wave securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

69. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

70. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

71. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

72. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

73. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other

members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of D-Wave securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire D-Wave securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

74. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for D-Wave securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about D-Wave's finances and business prospects.

75. By virtue of their positions at D-Wave, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

76. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of D-Wave, the Individual Defendants had knowledge of the details of D-Wave's internal affairs.

77. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of D-Wave. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to D-Wave's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of D-Wave securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning D-Wave's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired D-Wave securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

78. During the Class Period, D-Wave securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of D-Wave securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the

other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of D-Wave securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of D-Wave securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

79. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

80. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

81. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82. During the Class Period, the Individual Defendants participated in the operation and management of D-Wave, and conducted and participated, directly and indirectly, in the conduct of D-Wave's business affairs. Because of their senior positions, they knew the adverse non-public information about D-Wave's misstatement of income and expenses and false financial statements.

83. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to D-Wave's financial condition and results of operations, and to correct promptly any public statements issued by D-Wave which had become materially false or misleading.

84. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which D-Wave disseminated in the marketplace during the Class Period concerning D-Wave's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause D-Wave to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of D-Wave within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of D-Wave securities.

85. Each of the Individual Defendants, therefore, acted as a controlling person of D-Wave. By reason of their senior management positions and/or being directors of D-Wave, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, D-Wave to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of D-Wave and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

86. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by D-Wave.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: October 20, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

**Pro hac vice* application forthcoming